1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

8
9

MARIO LOPEZ JR., et al,                                CASE NO. CV-F-11-1547-LJO-BAM

10
                                    Plaintiff,          **ORDER ON DEFENDANTS' MOTION TO**
11        vs.                                          **DISMISS CONSTRUED AS A MOTION FOR**
                                                       **JUDGMENT ON THE PLEADINGS AND**
12                                                     **MOTION TO STRIKE** (Docs. 13, 14)

COUNTY OF TULARE, et al,

13
                                    Defendants.

14
                                                    /
15

16                              **INTRODUCTION**

17        This action arises from the death of Mario Lopez, Jr. ("Mr. Lopez") who committed suicide while

18  in custody at the Tulare County Jail.  Mr. Lopez's sons, Mario Lopez, III and Michael Lopez bring

19  survival and wrongful death claims.  Mr. Lopez's mother, Elida Lopez ("Ms. Lopez"), brings a wrongful

20  death claim.[1]  Defendants County of Tulare, Tulare County Sheriff's Department ("TCSD"), Sheriff

21  Coroner William Wittman ("Coroner Wittman"),  Deputy Christopher Landin ("Deputy Landin"), and

22  Does 1-20[2] seek to dismiss all counts of the complaint as factually insufficient.  In the alternative, they

23  seek to dismiss several of plaintiffs' state law claims, Ms. Lopez from Counts 3-6, and the Doe

24  defendants.  They also seek to strike plaintiffs' request for punitive damages and various statements in

25  the complaint.  Plaintiffs argue that their allegations are sufficiently pled, that a motion to strike is an

26  ─────────────

27        [1] Mario Lopez, III, Michael Lopez, and Ms. Lopez will be referred to collectively as "plaintiffs."

        [2] County of Tulare, TCSD, Coroner Wittman, Deputy Landin, and Does 1-20 will be referred to collectively as
28  "defendants."

                                              1

1   improper vehicle for challenging their request for punitive damages, and in the alternative that their

2   request for punitive damages would survive a motion to dismiss.  Plaintiffs also maintain that defendants'

3   request to strike various statements in the complaint should be denied.  For the reasons discussed below,

4   this Court construes defendants' motion to dismiss as a motion for judgment on the pleadings and

5   GRANTS the motion in part and DENIES in part, and DENIES defendants' motion to strike.

6                                      **BACKGROUND**[3]

7                                            **Facts**

8          Mr. Lopez was a mentally ill man who suffered from depression and schizophrenia for many

9   years. (Docket #3, ¶ 18).  With appropriate medication and treatment he was able to enjoy life's activities

10  and maintain relationships with his family.  (Docket #3, ¶ 18).  On August 27, 2010, Mr. Lopez suffered

11  a mental health relapse and exhibited unpredictable and threatening behavior.  (Docket #3, ¶ 19).  Ms.

12  Lopez, concerned for her son's health and worried that he had not been taking his medication, called 911

13  to have him transported to a hospital. (Docket #3, ¶ 19).  Deputy Landin responded to the call.  (Docket

14  #3, ¶ 20).  Ms. Lopez told Deputy Landin to take Mr. Lopez to a hospital for a 72-hour evaluation under

15  California's Welfare and Institutions Code § 5150.[4]  (Docket #3, ¶ 20).  Deputy Landin assured Ms.

16  Lopez that he would take Mr. Lopez to a hospital.  (Docket #3, ¶ 20).  Instead, Deputy Landin arrested

17  Mr. Lopez, caused criminal charges to be commenced against him, and booked him into the Tulare

18  County Jail.  (Docket #3, ¶ 20).

19         On November 23, 2010, while being housed in the Tulare County Main Jail in a cell with two

20  other inmates, Mr. Lopez caused a disturbance and informed a mental health worker that he was suicidal.

21  (Docket #3, ¶ 28).  The mental health worker recommended that Mr. Lopez be placed in a safety cell.

22  (Docket #3, ¶ 28).  At approximately 4:20 p.m., Mr. Lopez was moved to the Adult Pretrial Facility and

23  placed in a safety cell.  (Docket #3, ¶ 28).  The following morning, on November 24, 2010, Mr. Lopez

24  was cleared from the safety cell, transported back to the Main Jail, and placed in a single person cell

25

26         [3] The background facts are derived from the complaint.  This Court accepts these allegations as true for the Fed. R.
    Civ. P. 12(c) motion.  *See Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1301 n. 2 (9th Cir. 1992).

27         [4] California's Welfare and Institutions Code § 5150 allows a peace officer to place an individual who, as a result
28  of mental disorder, is a danger to himself or others or gravely disabled, in a mental health facility.

1 without suicide precautions. (Docket #3, ¶ 29). By early afternoon, Mr. Lopez committed suicide.
2 (Docket #3, ¶ 30).

3                                      **Procedural History**

4        On September 14, 2011, plaintiffs commenced the instant action in this Court. Mario Lopez, III
5 and Michael Lopez, Mr. Lopez's sons, bring survival and wrongful death claims as co-successors in
6 interest on behalf of Mr. Lopez and in their individual capacities. Ms. Lopez, Mr. Lopez's mother, brings
7 a wrongful death claim in her individual capacity. The complaint alleges six claims for relief: (1)
8 unreasonable search and seizure, malicious prosecution, deliberate indifference to serious medical and
9 psychiatric needs, and government interference with familial relationships, pursuant to 42 U.S.C. § 1983
10 ("section 1983") (against all defendants); (2) municipal liability under section 1983 (against Tulare
11 County, TCSD, Coroner Wittman, and Does 1-20); (3) violation of the Americans with Disabilities Act
12 ("ADA"), section 504 of the Rehabilitation Act ("RA"), and California's Disabled Persons Act ("DPA")
13 (against Tulare County); (4) violation of California Government Code § 845.6 (against Tulare County,
14 TCSD, Coroner Wittman, and Does 1-20); (5) violation of California's Bane Act, pursuant to Cal. Civ.
15 Code § 52.1 (against all defendants); and (6) negligence (against all defendants).

16        On October 31, 2011, defendants filed an answer to the complaint, a motion to dismiss pursuant
17 to Fed. R. Civ. P. 12(b)(6), and a motion to strike pursuant to Fed. R. Civ. P. 12(f). The November 30,
18 2011 hearing or oral argument was vacated, pursuant to Local Rule 230(g). Having considered
19 defendants' arguments and the relevant law, this Court issues this order.

20                                         **DISCUSSION**

21 **I. Motion to Dismiss Construed as Motion for Judgment on the Pleadings**

22        On October 31, 2011, defendants filed their answer, a motion to dismiss for failure to state a
23 claim, and a motion to strike. Plaintiffs contend that the motion to dismiss is improper because a motion
24 to dismiss for failure to state a claim must be made before pleading if a responsive pleading is allowed.
25 *See* Fed. R. Civ. P. 12(b). Plaintiffs assert that because defendants filed their answer prior to filing their
26 motion to dismiss, the motion to dismiss is improper.

27        A Fed. R. Civ. P. 12(b)(6) "motion must be made *before* the responsive pleading." *Elvig v. Calvin
28 Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004) (emphasis in original). However, a post-answer

                                                3

motion to dismiss for failure to state a claim may be treated as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Id*. (citing *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (per curiam)). The standard governing a Fed. R. Civ. P. 12(c) motion is essentially the same as that governing a Fed. R. Civ. P. 12(b)(6) motion. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). "The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing . . . [Otherwise,] the motions are functionally identical." *Id*. Because defendants' motion to dismiss was not filed prior to the answer but concurrently, this Court treats defendants' motion to dismiss for failure to state  a claim as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c). *See Beery v. Hitachi Home Electronics (America), Inc.*, 157 F.R.D. 477, 479-80 (C.D. Cal. 1993) (recognizing that because the moving party filed their answer and a Rule 12(b)(6) motion to dismiss on the same day, the motion to dismiss was technically untimely but could be construed as a motion for judgment on the pleadings, pursuant to Rule 12(c)).

A Fed. R. Civ. P. 12(c) motion will only be granted when, viewing the facts as presented in the pleadings in the light most favorable to the plaintiff, and accepting those facts as true, the moving party is entitled to judgment as a matter of law. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1301 n. 2 (9th Cir. 1992). When a Fed. R. Civ. P. 12(c) motion is used to raise the defense of failure to state a claim, the motion is subject to the same test as a motion under Fed. R. Civ. P. 12(b)(6). *Aldabe*, 616 F.2d at 1093. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550

1  U.S. at 557).    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

2  factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires

3  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

4  do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).    Thus, "bare

5  assertions...amount[ing] to nothing more than a 'formulaic recitation of the elements'...are not entitled

6  to be assumed true." *Iqbal*, 129 S. Ct. at 1951.  A court is "free to ignore legal conclusions, unsupported

7  conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

8  allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation

9  omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most favorable

10 to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing*

11 *Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must contain either

12 direct or inferential allegations respecting all the material elements necessary to sustain recovery under

13 some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745

14 F.2d 1101, 1106 (7th Cir. 1984)).  To the extent that the pleadings can be cured by the allegation of

15 additional facts, the plaintiff should be afforded leave to amend.  *Cook, Perkiss and Liehe, Inc. v.*

16 *Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

17     With these standards in mind, this Court turns to defendants' challenges to the allegations in

18 plaintiffs' complaint.

19     **A. Failure to State a Claim as to All Counts**

20     Defendants contend that all counts in the complaint should be dismissed for failure to state a claim

21 because they are conclusory and factually insufficient.  Defendants list 12 statements from the complaint

22 as examples of plaintiffs' conclusory and factually insufficient allegations.  This fails to properly advance

23 a motion to dismiss for failure to state a claim.

24     A motion to dismiss for failure to state a claim tests the legal sufficiency of the claims stated in

25 the complaint.  *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978) (the court's task in deciding a Fed.

26 R. Civ. P. 12(b)(6) motion is to "determine whether or not it appears to a certainty under existing law that

27 no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims").

28 "Claim" means a set of facts that, if established, entitle the pleader to relief.  *Twombly*, 550 U.S. at 555.

5

1   Dismissal is proper when the complaint fails to allege either a cognizable legal theory or there is an

2   absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless*

3   *Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). A motion to dismiss for failure to state a claim

4   cannot be used to challenge individual allegations within a claim while the underlying claim is not itself

5   challenged. *Thompson v. Paul*, 657 F. Supp. 2d 1113, 1129 (D. Ariz. 2009).

6       Defendants' motion contains a list of language from the complaint they contend is conclusory.

7   There is nothing per se wrong with including some conclusory language in a complaint, so long as the

8   complaint, overall, contains sufficient facts to support the claims advanced. Defendants' listing of

9   conclusory language, without any discussion of whether the complaint in its entirety provides factual

10  support for each element of each underlying claim, does not allow the Court to determine whether the

11  complaint fails to allege a cognizable legal theory or whether there is an absence of sufficient facts alleged

12  under a cognizable legal theory. Accordingly, this Court DENIES defendants' motion for judgment on

13  the pleadings as to their argument that all counts in the complaint should be dismissed.

14      **B. Count Four: Failure to State a Claim Under California Government Code § 845.6**[5]

15      Count Four alleges that Tulare County, the TCSD, and Does 1-20 violated California Government

16  Code § 845.6 ("section 845.6"). Section 845.6, holds a public entity and its employees liable if the

17  employee knows or has reason to know that a prisoner is in need of immediate medical care and fails to

18  take reasonable action to summon such medical care. Defendants argue that Count Four should be

19  dismissed because the factual circumstances set forth in plaintiffs' government claim do not correspond

20  with the facts alleged in the complaint.

21      Generally, under California law, no suit for money or damages may be maintained against a

22  governmental entity unless a formal claim has been presented to such entity, and has been rejected. Cal.

23  Gov. Code §§ 945.4, 912.4; *see Munoz v. State of Calif.*, 33 Cal. App. 4th 1767, 1776 (5th Dist. 1995).

24

25      [5] In their opening brief, defendants make the uncontroversial argument that California law governs the Fourth Cause
    of Action for "Violation of California Government Code § 845.6." Plaintiffs did not oppose this assertion. However, in

26  reply, defendants attempt to transform this argument into a general motion to dismiss this cause of action for failure to state
    a claim. (Docket #29, p.4-5). The Court will not address an argument raised for the first time in reply. *See Zamani v.*

27  *Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (holding that the "district court need not consider arguments raised for the first
    time in a reply brief").

28

1   The purpose of this statutory requirement is "to provide the public entity sufficient information to enable

2   it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation."

3   *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 455 (1974).  Once the formal claim has been rejected,

4   the plaintiff may file suit; however, the lawsuit cannot interject new or different claims.  Plaintiff is

5   limited to the matters set forth in the claim for which relief was denied.  *Nelson v. State of Calif.*, 139 Cal.

6   App. 3d 72, 75-76 (4th Dist. 1982).  However, the claimant is not barred from asserting additional legal

7   theories or further details to the facts alleged in the claim, as long as the complaint is predicated on the

8   same fundamental actions or failure to act by the persons and at the times specified in the claim.  *Stockett*

9   *v. Association of Calif. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004).

10   Relying on *Nelson v. State of California*, 139 Cal. App. 3d 72 (4th Dist. 1982), defendants argue

11   that the allegations in the government claim fail to support a count for failure to summon medical aid to

12   a prisoner.  In *Nelson*, the court held that the facts set forth in the government claim did not correspond

13   with the facts in the complaint because the claim did not recite that the prisoner's injury "was the result

14   of a failure on the part of any employee to summon immediate and competent medical care, but was the

15   'result of the failure of the Department of Corrections to diagnose and treat or allow claimant to maintain

16   his ongoing medications.'"  *Id*. at 80.  The court explicitly held that the "the act of a doctor or other such

17   professional who, in the course of treatment of a prisoner, fails to prescribe and/or provide the correct

18   medication is [not] the legal equivalent to a failure to summon medical care as set forth in [section

19   845.6]."  *Id*. at 80-81.  Defendants argue that here, as in *Nelson*, the facts set forth in the government

20   claim do not correspond with the facts as alleged in Count Four because the government claim contains

21   allegations of negligence and not allegations that defendants failed to summon medical care.

22   This case can be distinguished from *Nelson*.  Count Four alleges that Does 1-20, which the

23   complaint defines as Tulare County employees, knew or had reason to know that Mr. Lopez was in need

24   of medical and psychiatric care and failed to take reasonable action to provide him access to such care,

25   in violation of section 845.6.  The complaint further alleges that Mr. Lopez was booked into Tulare

26   County Jail on August 27, 2010, and committed suicide while in custody on November 24, 2010.  The

27   government claim provides that the "actions and omissions of the [TCSD] and its deputies and jail

28   personnel constitute violations of" Mr. Lopez's rights under section 845.6.  (Docket #13, Ex. A, p. 3).

The government claim further alleges that Mr. Lopez was incarcerated by Tulare County from August 28, 2010 until he committed suicide on November 24, 2010.  Because the government claim alleges that Tulare County employees violated Mr. Lopez's rights under section 845.6, the facts set forth in the government claim correspond to the facts set forth in the complaint.  Moreover, unlike in *Nelson*, because both the government claim and the complaint clearly invoke section 845.6, there can be no question that both allege claims for failure to summon medical care.  Finally, the allegations in the government claim are against the same individuals, Tulare County employees, and occurred during the same time period, August 28, 2010 to November 24, 2010, as in the complaint.  Accordingly, defendants' motion for judgment on the pleadings as to Count Four is DENIED.

### C. Count Six: Failure to State a Negligence Claim

Count Six alleges a cause of action for negligence against all defendants.  Included in this count is the allegation that all defendants owed all plaintiffs the duty to provide "prompt and appropriate medical and/or psychiatric care to" Mr. Lopez.  Defendants contend that Count Six should be dismissed for failure to state a claim because no duty of care is owed to plaintiffs by any defendant in conjunction with the medical care and treatment rendered to Mr. Lopez.  In opposition, plaintiffs argue that Count Six is cognizable and sufficiently pled because it sets forth a claim for general negligence brought as a wrongful death and/or survival claim.

#### 1. Wrongful Death Claim

Wrongful death "is a cause of action for the heir who recovers for the pecuniary loss suffered on account of the death of the relative."  *Jacoves v. United Merchandising Corp.*, 9 Cal. App. 4th 88, 105 (2nd Dist. 1992).  "In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence."  *Id*.  "Negligence involves the violation of a legal duty . . . by the defendant to the person injured, e.g., the deceased in a wrongful death action."  *Id*.  Defendants maintain that Count Six cannot be considered a claim for "wrongful death" because plaintiffs have failed to allege a duty of care owed to the decedent, Mr. Lopez.  This contention is belied by the complaint.  Paragraph 77 of the complaint lists the specific duties owed to Mr. Lopez, including the duty to provide prompt and appropriate medical and/or psychiatric care, to provide safe and appropriate jail custody, to summon necessary and appropriate medical and psychiatric care, to use

8

1 generally accepted law enforcement and jail procedures appropriate for a mentally ill person, to refrain

2 from abusing their authority, and to refrain from violating Mr. Lopez's constitutional rights.  Thus, this

3 Court DENIES defendants' motion for judgment on the pleadings as to defendants' wrongful death

4 argument.

5         **2. Survival Claim**

6       Cal. Civ. Code § 377.30 allows a decedent's successor in interest to commence an action  on the

7 decedent's behalf.  In order for a successor in interest to proceed on decedent's behalf the successor in

8 interest must file a declaration indicating that he or she is authorized to act as the decedent's successor

9 in interest, Cal. Civ. Code § 377.32, and must allege in the complaint that he or she is bringing the suit

10 in his or her representative capacity, *MacEachern v. City of Manhattan Beach*, 623 F. Supp. 2d 1092,

11 1100 (C.D. Cal. 2009).

12       Defendants contend that Count Six should be dismissed for failure to state a claim because no

13 duty of care is owed to plaintiffs by any defendant in conjunction with the medical care and treatment

14 rendered to Mr. Lopez.  Defendants' contention is unpersuasive because Mr. Lopez's sons, Mario Lopez,

15 III and Michael Lopez, allege a cause of action for negligence on Mr. Lopez's behalf as co-successors in

16 interest.  Both have filed declarations indicating that they are authorized to act as decedent's co-

17 successors in interest, pursuant to Cal. Civ. Code § 377.32, (Docket # 25, 26), and the complaint provides

18 that Mario Lopez, III and Michael Lopez are co-successors in interest for decedent (Docket #3, ¶ 3, 4).

19 Moreover, as discussed above, paragraph 77 of the complaint lists the specific duties owed to Mr. Lopez.

20 Thus, Count Six is properly pled, pursuant to Cal. Civ. Code § 377.30, with regard to Mario Lopez, III

21 and Michael Lopez as co-successors in interest for decedent.

22       Accordingly, this Court DENIES defendants' motion for judgment on the pleadings as to the

23 survival claims in Count Six brought by Mario Lopez, III and Michael Lopez as co-successors in interest

24 on behalf of Mr. Lopez and GRANTS defendants' motion for judgment on the pleadings as to the survival

25 claims in Count Six brought by Ms. Lopez, Mario Lopez, III, and Michael Lopez, acting in their

26 individual capacities.

27     **D. Plaintiff Ms. Lopez's Standing**

28       Defendants contend that Ms. Lopez's claims in Counts Three through Six should be dismissed

1 as a matter of law because she lacks standing to assert any "survival" actions, as she is not the decedent's

2 successor in interest or the personal representative of his estate.  In opposition, plaintiffs maintain that

3 Ms. Lopez has standing to bring a wrongful death claim as a dependent parent under Cal. Civ. Code §

4 377.60.  Cal. Civ. Code § 377.60(b) allows a parent, if he or she was dependent on the decedent, to bring

5 a cause of action for the death of the decedent caused by the wrongful act or neglect of another.  In order

6 to state a cause of action for wrongful death, the pleader must allege "(1) a wrongful act or neglect on the

7 part of one or more persons that (2) causes (3) the death of another person."  *Norgart v. Upjohn Co.*, 21

8 Cal. 4th 383, 404 (1999) (internal quotation marks and citations omitted).

9          The complaint plainly states that Ms. Lopez brings her claims as wrongful death claims.  The

10 complaint provides that: "Plaintiff ELIDA LOPEZ brings these claims individually pursuant to California

11 Code of Civil Procedure section 377.60 . . . At the time of Decedent's death, Plaintiff ELIDA LOPEZ was

12 dependent on the Decedent, relying on Decedent for financial and other support."  (Docket #3, ¶ 5).  The

13 allegations in Counts Three through Six as brought by Ms. Lopez simply allege a wrongful act or neglect

14 by defendants that caused the death of Mr. Lopez, which Ms. Lopez is required to allege in order to state

15 a cause of action for wrongful death.  *See Norgart*, 21 Cal. 4th at 404.  Accordingly, this Court DENIES

16 defendants' motion for judgment on the pleadings with regard to Ms. Lopez's standing.  She has standing

17 to bring a wrongful death claim as a dependent parent.

18          **E. Doe Defendants**

19          Defendants argue that plaintiffs have failed to state a claim upon which relief may be granted as

20 to Doe defendants 1-20 because the complaint fails to state what each Doe defendant did and why

21 plaintiffs are suing him or her.

22          "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v.*

23 *Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (internal citations omitted).  "However, situations arise . . .

24 where the identity of alleged defendants will not be known prior to the filing of a complaint.  In such

25 circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown

26 defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would

27 be dismissed on other grounds."  *Id*.  "While Doe pleading is disfavored, it is not prohibited in federal

28 practice."  *Lopes v. Vieira*, 543 F. Supp. 2d 1149, 1152 (E.D. Cal. 2008).  The Ninth Circuit has clarified

1  that although it has stated in dicta that Doe pleading is disfavored, plaintiffs should be given an

2  opportunity through discovery to identify Doe defendants "unless it is clear that discovery would not

3  uncover the identities." *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

4            **1. Malicious Prosecution**

5        Count One alleges that the Doe defendants violated section 1983 by depriving Mr. Lopez of the

6  "right to be free from malicious prosecution as secured by the Fourth and Fourteenth Amendments."

7  (Docket #3, ¶ 43(b)).  Plaintiffs allege that "Deputy LANDIN arrested Decedent without probable cause,

8  wrongfully caused criminal charges to be commenced against him, and wrongfully caused him to be

9  incarcerated in the Tulare County Jail.  Currently unidentified DOE Defendants may have also

10  contributed to the conduct and events described in this paragraph."  (Docket #3, ¶ 20).  Plaintiffs further

11  allege that "Defendant LANDIN and possibly currently unidentified DOE defendants wrongfully caused

12  criminal charges to be filed against Plaintiff, and these charges were based on false information . . ."

13  (Docket #3, ¶ 21).  The Doe defendants are those individuals who wrongfully caused criminal charges

14  to be commenced against Mr. Lopez and who wrongfully caused him to be incarcerated in the Tulare

15  County Jail.  Although plaintiffs use tentative language regarding the existence of the Doe defendants

16  because it is not clear that discovery would not uncover their identities if they do in fact exist, this Court

17  DENIES defendants' motion for judgment on the pleadings with regard to this issue.

18            **2. Deliberate Indifference**

19        Count One also alleges that the Doe defendants violated section 1983 by depriving Mr. Lopez of

20  the rights secured by the Fourteenth Amendment by subjecting him or through their deliberate

21  indifference allowing others to subject him to the denial of medical and psychiatric care.  (Docket #3, ¶

22  37, 40).  Specifically the complaint alleges that:

23

24          [O]n or about November 23, 2010, [Mr. Lopez] . . . informed a mental health worker that he was suicidal. . . the mental health worker recommended [Mr. Lopez] be placed in a safety cell. . . [Mr. Lopez] was . . . placed in a safety cell

25          at approximately 4:20 p.m.

26          . . . Defendants, including currently unidentified jail and medical personnel, cleared [Mr. Lopez] from the safety cell the very next morning, on or about

27          November 24, 2010 . . . Defendants [then] . . . placed [Mr. Lopez] in [a] single-person cell, without suicide precautions, at approximately 9:20 a.m.

28

1

2

3

4

> On or about the early afternoon of November 24, 2010, as a result of Defendants' deliberate indifference to [Mr. Lopez's] serious but treatable medical and mental health conditions and Defendants' other wrongful conduct, [Mr. Lopez] committed suicide at the Tulare County Main Jail. . . [Mr. Lopez] was not on suicide watch or any suicide precautions, and [Mr. Lopez] was not housed in a safety cell at this time.

5   (Docket #3, ¶ 28-30).  Discovery could uncover the identities of the Doe defendants because the Doe

6   defendants are unidentified jail and medical personnel who cleared Mr. Lopez from his safety cell on

7   November 24, 2010 and placed him in a cell without suicide precautions.  Defendants' motion for

8   judgment on the pleadings with regard to this issue is DENIED.

9            **3. Municipal Liability**

10         Count Two alleges that Tulare County and the TCSD, through their administrators and

11  policymakers, including Does 1-20 "failed to properly hire, train, instruct, monitor, supervise, evaluate,

12  investigate and discipline" Deputy Landin and Does 1-20.  (Docket #3, ¶ 51).  Discovery could uncover

13  the identities of the Doe defendants in this allegation because the Doe defendants are those who hired,

14  trained, instructed, monitored, supervised, evaluated and/or were responsible for investigating and

15  disciplining Deputy Landin and those who worked for the Tulare County Jail and came in contact with

16  Mr. Lopez during his incarceration.  Defendants' motion for judgment on the pleadings with regard to

17  this issue is DENIED.

18           **4. Negligence**

19         Count Six alleges a negligence claim against all defendants.  Specifically, plaintiffs allege that

20  all defendants breached their duty to: (1) refrain from wrongfully arresting and maliciously prosecuting

21  Mr. Lopez; (2) provide safe and appropriate jail custody and summon necessary and appropriate

22  psychiatric care; and (3) use generally accepted jail procedures appropriate for a mentally ill person.[6]

23  Discovery could uncover the identities of the Doe defendants in these allegations because the Doe

24  defendants are those who participated in the prosecution of Mr. Lopez and who released Mr. Lopez from

25  the safety cell without providing him any sort of psychiatric care.  This Court DENIES defendants'

26

27

28

---

[6] Plaintiffs also allege that defendants breached their duty to "provide, or have provided, prompt and appropriate medical and/or psychiatric care" for Mr. Lopez.  (Docket #3, ¶ 77(b)).  Because plaintiffs state in their opposition to defendants' motion to strike that they are not bringing a claim for professional negligence against a health care provider (Docket #22, fn. 1), this  Court declines to address this issue as it relates to the Doe defendants.

1    motion for judgment on the pleadings with regard to this issue.

2           Defendants contend that under *Moore v. Atwater Police Department*, 2011 U.S. Dist. LEXIS

3    117677 (E.D. Cal. 2011), when a plaintiff is not able to name one or more defendants when a complaint

4    is filed, the plaintiff must provide sufficient information to enable both the Court and the defendants to

5    know who the plaintiff is trying to identify.  This case can be distinguished from *Moore*.  *Moore* is an

6    unpublished screening order in which the plaintiff named 25 Doe defendants that were not "linked to any

7    specific act or omission that gave rise to a violation of Plaintiff's constitutional rights."  *Moore,* 2011

8    U.S. Dist. LEXIS 117677 at *7.  As discussed above, each of the allegations against the Doe defendants

9    are linked to specific acts or omissions that gave rise to a violation of Mr. Lopez's constitutional rights.

10          In sum, because there is no indication that discovery would not uncover the identities of the

11   unknown defendants, s*ee Velasquez v. Senko*, 643 F. Supp. 1172, 1180 (N.D. Cal. 1986) (denying

12   defendants' motion to dismiss the Doe defendants because under the circumstances alleged plaintiffs

13   could not be expected to identify all of the defendants absent some discovery and discovery was likely

14   to uncover the names of the Doe defendants), this Court DENIES defendants' motion for judgment on

15   the pleadings without prejudice with regard to the use of Doe defendants in the complaint.

16          **F. Count Three: Failure to State a Claim Under the DPA**

17          Defendants contend that plaintiffs' allegations under the DPA in Count Three of their complaint

18   should be dismissed without leave to amend because the DPA only guarantees physical access to a facility

19   and plaintiffs' claim is predicated upon the alleged denial of services.

20          Under the DPA, "[i]ndividuals with disabilities or medical conditions have the same right as the

21   general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings,

22   medical facilities, including hospitals, clinics, and physicians' offices, public facilities, and other public

23   places." Cal. Civ. Code § 54.  "The DPA is intended to secure to disabled persons the same right as the

24   general public to the full and free use of facilities open to the public.  Its focus is upon *physical* access

25   to public places . . ." *Turner v. Association of American Medical Colleges*, 167 Cal. App. 4th 1401, 1412

26   (1st Dist. 2008) (emphasis in original) (internal quotation marks and citations omitted).  In *Turner*,

27   individuals with learning disabilities alleged that defendants violated the DPA by requiring them to take

28   a standardized test without providing any accommodations for their disabilities.  *Id*.  The Court held that

                                            13

the DPA could not be read to require accommodations for learning and reading-related disabilities on a standardized test because the DPA "entitles disabled persons to full and free use of public *places*." *Id*. (emphasis in original) (internal quotation marks and citations omitted).  The Court concluded that "[n]othing in the language of section 54 can be reasonably construed to require a modification of the test procedures themselves, except to the extent necessary to guarantee physical access to the place in which the test is administered." *Id*.

Here, plaintiffs allege that defendants violated the DPA by housing Mr. Lopez in a cell that did not contain suicide precautions.  The DPA only guarantees physical access to a facility.  *See Madden v. Del Taco, Inc.*, 150 Cal. App. 4th 294, 301 (2007) (Cal. Civ. Code § 54 "has always drawn meaning from a growing body of legislation intended to reduce or eliminate the physical impediments to participation of physically handicapped persons in community life, i.e., the architectural barriers against access by the handicapped to buildings, facilities, and transportation systems used by the public at large") (internal quotation marks and citations omitted).  Mr. Lopez does not allege that he was denied physical access to the Tulare County Jail; rather, he alleges that he was housed in a cell that did not contain suicide precautions.  Because defendants alleged failure to house Mr. Lopez in a cell with suicide precautions did not deny Mr. Lopez physical access to the Tulare County Jail, the DPA does not apply here.  *See Turner*, 167 Cal. App. 4th at 1412 (holding that the DPA's focus is upon physical access to public places).[7]

Moreover, this Court rejects plaintiffs' argument that the DPA protects a detainees' right to mental health services.  Plaintiffs contend that because the Ninth Circuit has held that the ADA and the DPA are "coextensive" and because the DPA statutorily incorporates the ADA, then the DPA protects detainees' rights to mental health services.  These contentions are unpersuasive.  Plaintiffs rely on *Pierce v. County*

---

[7] Although not binding, there are two unpublished decisions from the northern district of California that have reached the same conclusion. *Anderson v. County of Siskiyou*, 2010 WL 3619821, *6 (N.D. Cal. 2010) (holding that because the DPA only guarantees physical access to a facility it had no application to a case in which the plaintiff brought a wrongful death action after her son committed suicide while in custody at the Siskiyou County Jail; *see also Eller v. City of Santa Rosa*, 2009 WL 3517610, *3-4 (N.D. Cal. 2009) (denying plaintiff's request for leave to add a cause of action under the DPA because the DPA only protects disabled individuals against physical impediments to accessing public places and plaintiff's proposed DPA claim did not allege any such barrier).  Plaintiffs argue that their claim *is* based on denial of physical access because the physical features of the cell in which decedent was placed made that cell unsafe for a person with his disability. (Docket #20, p.18-19).  Correcting this situation would require more than just access; it would require a physically modified cell, which is exactly the type of accommodation that is not covered by the DPA.

1    *of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008), to argue that the Ninth Circuit has stated that the ADA

2    and DPA are "coextensive."   In *Pierce*, the Ninth Circuit made a passing reference to the fact that the

3    ADA and DPA's "access requirements" are co-extensive.  *Id*.  The Ninth Circuit did not hold that the

4    statutes themselves were "coextensive."  Plaintiffs' argument that the DPA statutorily incorporates the

5    ADA is equally unpersuasive.  Cal. Civ. Code § 54(c) provides that "[a] violation of the right of an

6    individual under the [ADA] . . . also constitutes a violation of this section."  Plaintiffs argue that this

7    section incorporates the ADA in its entirety into the DPA.  The Ninth Circuit has held that the DPA only

8    incorporates those provisions of the ADA that are germane to the statutes' original subject matter.  *Bass*

9    *v. County of Butte*, 458 F.3d 978, 981-83 (9th Cir. 2006).  Accordingly, Cal. Civ. Code § 54(c) only

10   incorporates those provisions of the ADA that relate to physical access to public places.  Defendants'

11   motion for judgment on the pleadings as to plaintiffs' claims under the DPA in Count Three is

12   GRANTED WITH LEAVE TO AMEND.

13          **G. Count Five: Failure to State a Claim Under the Unruh and Bane Act**

14          In Count Five, plaintiffs allege that all defendants violated their rights under the Unruh Act, which

15   is codified in Cal. Civ. Code § 51.  Defendants contend that these allegations should be dismissed without

16   leave to amend because the Unruh Act only applies to establishments that engage in business transactions

17   and a county jail is not a business establishment.  Plaintiffs concede that they did not intend to bring any

18   claims pursuant to the Unruh Act.  Based on plaintiffs' concession, defendants' motion for judgment on

19   the pleadings with regard to all references to the Unruh Act, Cal. Civ. Code § 51, in the complaint is

20   GRANTED.

21          In Count Five, plaintiffs also allege that all defendants violated their rights under the Bane Act,

22   which is codified in Cal. Civ. Code § 52.1 ("section 52.1").  Defendants argue that a violation of the Bane

23   Act requires interference with a legal right by threats, intimidation, or coercion and that plaintiffs fail to

24   allege facts to show that threats, intimidation, or coercion occurred.

25          "Section 52.1 authorizes a claim for relief 'against anyone who interferes, or tries to do so, by

26   threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal

27   or state law.'"  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal. 2009) (citing *Jones*

28   *v. Kmart Corp.*, 17 Cal. 4th 329, 331 (1998)).  A claim under section 52.1 "requires a showing of 'an

15

1   attempted or completed act of interference with a legal right, accompanied by a form of coercion.'"

2   *Martin v. County of San Diego*, 650 F. Supp. 2d 1094, 1108 (S.D. Cal. 2009) (citing *Jones v. Kmart*

3   *Corp.*, 17 Cal. 4th 329, 334 (1998)).

> [I]n order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must result in an interference with a separate constitutional or statutory right. It is not sufficient that the right interfered with is the right to be free of the force or threat of force that was applied.

7   *Rodriguez v. City of Fresno*, 2011 WL 1883195, *13 (E.D. Cal. 2011).

8          Plaintiffs contend that they have alleged sufficient facts to state a claim under section 52.1,

9   including the presence of conduct from which threats, intimidation or coercion may be inferred, because

10  Mr. Lopez was incarcerated in the Tulare County Jail for months, and experienced deliberate indifference

11  to his medical and psychiatric needs.  Incarceration coupled with deliberate indifference to medical and

12  psychiatric needs does not constitute "threats, intimidation, or coercion" for purposes of section 52.1.

13  S*ee Gant v. County of Los Angeles*, 765 F. Supp. 2d 1238, 1253-54 (C.D. Cal. 2011) ("a wrongful arrest

14  and detention, without more, cannot constitute 'force, intimidation, or coercion' for purposes of section

15  52.1");[8] *cf. Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1177 (N.D. Cal. 2010) (finding that plaintiff

16  set forth sufficient facts to raise a plausible claim under section 52.1 because defendants interfered with

17  plaintiff's free speech rights by harassing and physically attacking plaintiff).  Even if this Court were to

18  hold that incarceration coupled with indifference to medical and psychiatric needs constitutes "threats,

19  intimidation, or coercion," the right allegedly interfered with is the right to be free from this harm.  This

20  is insufficient to state a claim under the Bane Act.  *See Rodriguez*, 2011 WL 1883195 at *13 (holding that

21  "in order to maintain a claim under the Bane Act, the coercive force applied against a plaintiff must result

22  in an interference with a separate constitutional or statutory right" than the right interfered with).

23  Accordingly, defendants' motion for judgment on the pleadings with regard to Count Five is GRANTED

24

25

26          [8] Although not binding, in an unpublished decision the Ninth Circuit held that allegations that prison officials did not timely respond to a prisoner's "requests, grievances, and appeals" in connection to his civil rights action which alleged

27  that prison officials were deliberately indifferent to his medical needs, did not constitute "threats, intimidation, or coercion" for purposes of section 52.1.  *Brook v. Carey*, 352 Fed. Appx. 184, 185 (9th Cir. 2009).

28

1  WITH LEAVE TO AMEND.[9]

2       **H. Request for Punitive Damages**

3       In defendants' Fed. R. Civ. P. 12(f) motion to strike, they seek to strike plaintiffs' requests for

4  punitive damages in Counts Four and Six on the ground that the damages are not recoverable as a matter

5  of law. Fed. R. Civ. P. 12(f) "does not authorize district courts to strike claims for damages on the ground

6  that such claims are precluded as a matter of law." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970,

7  971 (9th Cir. 2010). Because plaintiffs recognize *Whittlestone's* holding that such a motion must be

8  adjudicated as a Fed. R. Civ. P. 12(b)(6) motion to dismiss and opposed defendants' motion under Rule

9  12(b)(6) standards, this Court construes defendants' motion to strike plaintiffs' requests for punitive

10  damages as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), *see Beery*, 157

11  F.R.D. at 479-80 (recognizing that because the moving party filed their answer and Rule 12(b)(6) motion

12  to dismiss on the same day, the motion to dismiss could be construed as a motion for judgment on the

13  pleadings, pursuant to Fed. R. Civ. P. 12(c)).

14       **1. Request for Punitive Damages Against Coroner Wittman (Count Four)**

15       With regard to Count Four, defendants argue that plaintiffs cannot recover punitive damages

16  against Coroner Wittman because under California law punitive damages are not recoverable against a

17  government employee when the employee acts in his official capacity. Plaintiffs concede that they do

18  not seek punitive damages against Coroner Wittman in his official capacity. Based on plaintiffs'

19  concession, defendants' motion for judgment on the pleadings with regard to any request for punitive

20  damages against Coroner Wittman in his official capacity is GRANTED.

21       **2. Request for Punitive Damages in Wrongful Death Claim (Count Six)**

22       With regard to Count Six, defendants maintain that under Cal. Civ. Code § 425.13 an individual

23  cannot recover punitive damages for professional negligence against a health care provider unless a claim

24  for punitive damages is allowed by the court and here, that has not occurred. Cal. Civ. Code § 425.13(a)

25  provides that:

26  _____

27       [9] Because this Court grants defendants' motion for judgment on the pleadings with regard to Count 5, this Court
declines to address defendants' contention, which was raised for the first time in their reply, that plaintiffs are not entitled

28  to relief under section 52.1 because the Bane Act is not a wrongful death provision but only a personal cause of action for
the victim.

1   In any action for damages arising out of the professional negligence of a health
2   care provider, no claim for punitive damages shall be included in a complaint or
    other pleading unless the court enters an order allowing an amended pleading
3   that includes a claim for punitive damages to be filed.

4   In plaintiffs' opposition they concede that they are not bringing a claim for professional negligence

5   against a health care provider.  (Docket #22, fn. 1).  Accordingly, this statute is irrelevant.  Thus, this

6   Court DENIES defendants' motion for judgment on the pleadings as to plaintiffs' request for punitive

7   damages in Count Six.

8   **II. Motion to Strike**

9         Federal Rule of Civil Procedure 12(f) permits the Court to "strike from a pleading an insufficient

10  defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).

11  "Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved

12  in the action."  *California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp. 2d 1028,

13  1033 (C.D. Cal. 2002) (internal quotation marks and citations omitted).  Immaterial matter is "that which

14  has no essential or important relationship to the claim for relief or the defenses being pleaded."  *Fantasy,*

15  *Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (internal quotation marks and citations omitted),

16  *rev'd on other grounds*, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).  Impertinent matter

17  "consists of statements that do not pertain, and are not necessary, to the issues in question."  *Id.*

18  Scandalous matter is that which "improperly casts a derogatory light on someone, most typically on a

19  party to the action."  *Germaine Music v. Universal Songs of Polygram*, 275 F. Supp. 2d 1288, 1300 (D.

20  Nev. 2003) (internal quotation marks and citations omitted).

21        The function of a Fed. R. Civ. P. 12(f) motion is "to avoid the expenditure of time and money that

22  must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Whittlestone,*

23  *Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).  "Motions to strike are generally regarded

24  with disfavor because of the limited importance of pleading in federal practice, and because they are often

25  used as a delaying tactic.  *California Dept. of Toxic Substances Control v. Alco Pacific, Inc.*, 217 F. Supp.

26  2d 1028, 1033 (C.D. Cal. 2002); *see also Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1170 (E.D. Cal.

27  2005) (Motions to strike are generally disfavored and "should not be granted unless it is clear that the

28  matter to be stricken could have no possible bearing on the subject matter of the litigation.").  "Given

their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief." *California Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033 (internal quotation marks and citations omitted). "The possibility that issues will be unnecessarily complicated or that superfluous pleadings will cause the trier of fact to draw 'unwarranted' inferences at trial is the type of prejudice that is sufficient to support the granting of a motion to strike." *Id*. (citing *Fogerty, supra,* 984 F.2d at 1528).

**A. Timeliness of Motion to Strike**

As a preliminary matter, plaintiffs oppose defendants' motion to strike because it was filed on the same day as defendants' answer. With respect to the timing of a Fed. R. Civ. P. 12(f) motion, the rule states, "[t]he court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). Because the rule authorizes the Court to act on its own initiative at any time, the Court may consider an untimely motion to strike where it seems proper to do so. *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1039 (E.D. Cal. 2009); *Corrections USA v. Dawe*, 504 F. Supp. 2d 924, 930 (E.D. Cal. 2007). Here, defendants filed their answer and motion to strike on the same day. (Docket #12, 14). Thus, technically defendants' motion to strike is untimely. However, because Fed. R. Civ. P. 12(f) authorizes the Court to act on its own initiative, the Court considers defendants' untimely motion.

**B. Merits of Motion to Strike**

Defendants request that the Court strike the following 12 passages as they are redundant, immaterial, impertinent, and/or scandalous:

| | |
|---|---|
| (1) | " . . . the tragic death . . ." (p. 6, line 4-5) |
| (2) | " . . . which are serious but treatable psychiatric conditions." (p. 6, lines 7-8) |
| (3) | "With appropriate medication and treatment, Decedent continued to enjoy life's activities and to have strong and bonding relationships with his mother, sons and other family members." (p. 6, lines 8-10) |
| (4) | " . . . induced by Defendants' fraud, corruption, perjury, fabricated evidence and/or other wrongful conduct undertaken in bad faith." (p. 7, lines 10-12) |
| (5) | Paragraph 22 (p. 7, lines 17-23) |
| (6) | "On information and belief, all charges against [decedent] were dismissed upon his death and therefore all charges were |

19

1   ultimately resolved in his favor." (p. 8, lines 1-2)
    (7)     "Defendants were deliberately indifferent to Decedent's
2           immediate and serious medical needs, including the risk of
            suicide, severe mental illness and emotional disturbance." (p.
3           8, lines 10-12)
    (8)     "Defendants . . . were deliberately indifferent to his serious
4           medical needs and risk of
            suicide." (p. 8, lines 17-21)
5   (9)     " . . . as a result of Defendants' deliberate indifference to
            Decedent's serious but treatable medical and mental health
6           conditions . . ." (p. 9, lines 14-16)
    (10)    Paragraph 32 (p. 10, lines 3-7)
7   (11)    Paragraph 33 (p. 10, lines 8-9)
    (12)    Paragraph 40 (repeat of paragraph 37)
8

9       This Court denies defendants' motion to strike the above passages from plaintiffs' complaint

10  because the passages are not redundant, immaterial, impertinent, or scandalous.  Fed. R. Civ. P. 12(f).

11  The above passages either appear only once in the complaint or to the extent that they are repeated, the

12  repetition is not needless.  *See California Dept. of Toxic Substances Control*, 217 F. Supp. 2d at 1033

13  ("Redundant allegations are those that are needlessly repetitive or wholly foreign to the issues involved

14  in the action.").  In addition, the above passages are not immaterial or impertinent because each of them

15  relate directly to plaintiffs' causes of action.  *See Fogerty*, 984 F.2d at 1527 (immaterial matter is that

16  which has no important relationship to the claim being pleaded, impertinent matter are statements that

17  do not pertain to the issues in question).  For instance, the descriptions of Mr. Lopez's psychiatric

18  condition, discussed in passages 2, 3, and 9 above, relate directly to Mr. Lopez's section 1983, ADA, and

19  negligence claims.  Likewise, passages 4, 5, 6, and 11 relate directly to Mr. Lopez's wrongful arrest and

20  malicious prosecution claims.  Finally, the above passages are not scandalous because they either do not

21  cast a derogatory light on anyone or to the extent that they do, the derogatory light is not improper.

22  *Germaine Music*, 275 F. Supp. 2d at 1300 (Scandalous matter is that which "improperly casts a

23  derogatory light on someone, most typically on a party to the action.").  Accordingly, this Court DENIES

24  defendants' motion to strike.

25                          **CONCLUSION AND ORDER**

26      For the reasons discussed above, this Court:

27  1.      DENIES defendants' motion for judgment on the pleadings with regard to defendants'

28          argument that all counts of the complaint are factually insufficient;

20

2.      DENIES defendants' motion for judgment on the pleadings as to Count Four;

3.      GRANTS defendants' motion for judgment on the pleadings with regard to the survival claims brought by plaintiffs in their individual capacities in Count Six and DENIES defendants' motion for judgment on the pleadings with regard to plaintiffs' wrongful death claims in Count Six and the survival claims brought by Mario Lopez, III and Michael Lopez in their representative capacities;

4.      DENIES defendants' motion for judgment on the pleadings with regard to Ms. Lopez's standing;

5.      DENIES, without prejudice, defendants' motion for judgment on the pleadings as to the Doe defendants;

6.      GRANTS defendants' motion for judgment on the pleadings with regard to plaintiffs' DPA claim in Count Three with leave to amend;

7.      GRANTS defendants' motion for judgment on the pleadings with regard to Count Five with leave to amend;

8.      GRANTS defendants' motion for judgment on the pleadings as to plaintiffs' request for punitive damages in Count Four against Coroner Wittman in his official capacity;

9.      DENIES defendants' motion for judgment on the pleadings as to plaintiffs' request for punitive damages in Count Six; and

10.     DENIES defendants' motion to strike.


IT IS SO ORDERED.

**Dated:**      **January 6, 2012**                  **/s/ Lawrence J. O'Neill**
                                            UNITED STATES DISTRICT JUDGE